## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **EMORY UNIVERSITY, INC. D/B/A EMORY UNIVERSITY HOSPITAL, AND THE EMORY CLINIC, INC.,** | § § § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO.** |
| **VS.** | § § § | _____ |
| **NEUROCARE, INC.,** | § § § | |
| **Defendant.** | § | |

## I.
## PARTIES

1.   Plaintiffs Emory University, Inc. d/b/a Emory University Hospital (herein also referred to as "Emory University Hospital"), and The Emory Clinic, Inc. (herein also referred to as "Emory Clinic") (collectively, "Plaintiffs"), are each Georgia non-profit corporations, with their principal places of doing business in Georgia.  Each of Emory University Hospital and Emory Clinic is a citizen of the State of Georgia.

2.     Defendant Neurocare, Inc. (herein "Neurocare") is a foreign company incorporated under the laws of the Commonwealth of Massachusetts, with its principal place of doing business located at 70 Wells Avenue, Newton, Massachusetts 02459.

3.     Neurocare is a citizen of the Commonwealth of Massachusetts.

4.     Neurocare has subjected itself to the jurisdiction of this court by entering into contracts to provide services for Emory University Hospital and Wesley Woods Center of Emory University, Inc. d/b/a Wesley Woods Geriatric Hospital, and by providing services under those agreements.  Neurocare may be served by serving its Georgia registered agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## II.
## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship among the parties to this suit and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim alleged herein occurred in this District.

## III.
## FACTUAL BACKGROUND

**A.**   **Corporate Legal and Organizational Structure of Emory University, and Its Legal Relationship with The Emory Clinic, Inc., Emory Healthcare, Inc., and Wesley Woods Center of Emory University, Inc.**

7.    The corporation "Emory University" is sometimes referred to as "Emory University, Inc."

8.    The Emory Clinic, Inc. is, and has been at all times relevant to this case, a wholly owned and controlled subsidiary of Emory University.

9.    Likewise, Emory Healthcare, Inc. is, and has been at all times relevant to this case, a wholly owned and controlled subsidiary of Emory University.

10.    Wesley Woods Center of Emory University, Inc. is, and has been at all times relevant to this case, a wholly owned and controlled subsidiary of Emory Healthcare, Inc.

11.    At all times relevant to this case, Emory University has been the parent corporation of Emory Healthcare, Inc., which has been the parent corporation of Wesley Woods Center of Emory University, Inc.

12.    Emory University Hospital is, and has been at all times relevant to this case, one of the operating divisions of Emory University.

13.    Prior to July 2014, Wesley Woods Geriatric Hospital was one of the operating divisions of Wesley Woods Center of Emory University, Inc.

14.     Thus, at all times relevant to this case, The Emory Clinic, Inc., Emory University (of which Emory University Hospital is an operating division), Emory Healthcare, Inc., and Wesley Woods Center of Emory University, Inc. (of which Wesley Woods Geriatric Hospital was an operating division prior to July 2014) have been legal affiliates of one another.

**B.    The Sleep Diagnostic Services Agreement**

15.     On or about June 19, 2005, Plaintiffs entered into a Sleep Diagnostic Services Agreement with Neurocare (the "SDSA") for the purpose of staffing and operating a sleep diagnostic clinic known as the Emory Sleep Lab.

16.     A true and correct copy of the SDSA is attached hereto as Exhibit "A."

17.     Sections 4.0 through 4.9 of the SDSA provided generally that Emory University Hospital (denoted as "HOSPITAL" in the SDSA) would provide the physical space and support services (including maintenance, utilities, marketing, and billing) for the operation of a sleep diagnostic services laboratory.

18.     The SDSA, sections 3.0 through 3.5, provided that Neurocare, "operating as an independent contractor," would hire, employ, train, evaluate, compensate, and provide the onsite sleep technologists necessary to operate the sleep lab, provide the necessary equipment, and exercise the day-to-day management and oversight of the Emory Sleep Lab.

19.     Section 3.3 of the SDSA provided that all such sleep technologists were expressly stipulated to be employees of Neurocare, and not of Emory University Hospital or Emory Clinic.

20.     At the time the SDSA was entered into, the Emory Sleep Lab was located within Emory University Hospital.

21.     In the SDSA, Section 9.1, Neurocare, designated as "CONTRACTOR," agreed to "indemnify, defend, save and hold harmless forever HOSPITAL [*i.e.*, Emory University, Inc. d/b/a Emory University Hospital], its subsidiaries and affiliates, successors and assigns, and its officers, directors, trustees, employees and agents from and against all liability, loss, damage, claim, cause[s] of action, costs or expense (including reasonable attorney's fees actually incurred and Court costs) that is caused directly or indirectly by or as a result of any intentional or negligent act or omission by [Neurocare], or its agents or employees providing services pursuant to [the SDSA]."

22.     The parties to the SDSA agreed that Section 9.1 survived any expiration or termination of the SDSA.

23.     In Section 9.3 of the SDSA, the parties agreed that they were specifically reserving their common law rights of indemnity which either party may have against the other.

C.    **The Medical Director Agreement**

24.    On or about June 19, 2005, Neurocare and Emory Clinic separately entered into a Medical Director Agreement (the "MDA") regarding the Emory Sleep Lab.

25.    A true and correct copy of the MDA is attached hereto as Exhibit "B."

26.    In the MDA, the parties agreed Emory Clinic would provide administrative services, clinical direction and oversight, and other quality assurance services at the Emory Sleep Lab.  The parties also agreed to designate an Emory Clinic physician to serve as the medical director of the Emory Sleep Lab.

27.    Section 3.5 of the MDA provides that Neurocare "shall maintain professional liability and/or other appropriate insurance" for the physician designated as the medical director, in amounts no less than $1 million for each claim.

28.    At the time of the events giving rise to this case, the parties to the MDA agreed Dr. David Schulman, an employee of The Emory Clinic, Inc., would serve as the medical director of Emory Sleep Lab.

29.    Dr. David Schulman did serve as the medical director of the Emory Sleep Lab in the course and scope of his duties as an employee of The Emory Clinic, Inc.

30.    On or about January 22-23, 2010, the SDSA and the MDA were in full force and effect.

**D.    Amendment to Sleep Diagnostic Services Agreement**

31.    Approximately eleven months following the execution of the SDSA and the MDA, the location of the Emory Sleep Lab covered by these agreements was moved from Emory University Hospital to the campus of Wesley Woods Geriatric Hospital.

32.    As a result, Emory University Hospital, Emory Clinic, Neurocare, and Wesley Woods Center of Emory University, Inc. d/b/a Wesley Woods Geriatric Hospital ("Wesley Woods"), entered into an Amendment to the SDSA, effective May 11, 2006 ("SDSA Amendment").

33.    A true and correct copy of the SDSA Amendment is attached hereto as Exhibit "C."

34.    The SDSA Amendment redefined "HOSPITAL" in the SDSA to mean Wesley Woods, and defined "EMORY" as "Emory University, Inc. d/b/a Emory University Hospital."

35.    The SDSA Amendment provided that the obligations of the parties to the SDSA shall remain in effect and survive the SDSA Amendment.

36.    Thus, Neurocare's contractual indemnity obligations set out in Section 9.1 of the SDSA – running from Neurocare (as Contractor) to Emory University,

Inc. d/b/a Emory University Hospital (as Hospital) and its affiliates, including The Emory Clinic, Inc. and Wesley Woods – remained in effect and survived the SDSA Amendment.

**E.      Death of Brandon Harris at the Emory Sleep Lab**

37.     Brandon Harris was a patient undergoing a sleep study conducted January 22-23, 2010, at the Emory Sleep Lab located on the Wesley Woods campus.

38.     After he awoke on January 23, 2010, Brandon Harris developed respiratory distress at about 0430 and passed away.

39.     At the time of the events starting around 0430 on January 23, 2010, the employees of Neurocare, its sleep technologists, were acting within the scope of their employment with Neurocare and providing services under the SDSA and SDSA Amendment, and were present and responsible for properly administering the sleep study to Brandon Harris, and/or properly responding when Mr. Harris developed respiratory distress.

40.     Brandon Harris died at the Emory Sleep Lab as a result of a cardiopulmonary arrest, on or about January 23, 2010.

41.     On or about February 10, 2010, Emory University Hospital and Emory Clinic sent written notice of this claim to Neurocare and demanded that Neurocare hold each of them harmless, defend each of them, and indemnify each

of them from any losses arising out of Mr. Harris's sleep study and/or his death and/or the incident that occurred at the Emory Sleep Lab on or about January 23, 2010. Having received no response from Neurocare to Plaintiffs' demands, it is presumed that Neurocare admitted that it owed the duty to indemnify and to defend each of the Plaintiffs in connection with the incident that occurred at the Emory Sleep Lab on or about January 23, 2010, as well and any losses arising out of Mr. Harris's sleep study and/or his death.[1]

42.     Neurocare failed to assume the defense of Emory University Hospital and Emory Clinic, failed to hold harmless Emory University Hospital and Emory Clinic, and failed to otherwise indemnify either of them.

43.     On or about September 7, 2015, after having receiving the MDA for the first time, The Emory Clinic again requested that Neurocare defend Dr. David Schulman and indemnify it and Dr. Schulman in the Underlying Lawsuit, in accordance with Neurocare's obligation under Section 3.5 of the MDA.

44.     Neurocare failed to respond, failed to assume the defense of Dr. David Schulman, failed to hold harmless Dr. David Schulman and Emory Clinic, and failed to otherwise indemnify either of them.

45.     Neurocare failed to maintain professional liability insurance for Dr. David Schulman as medical director of the Emory Sleep Lab.

---

[1]     . O.C.G.A. § 24-14-23.

46.    Any business providing professional liability coverage for Dr. David Schulman failed to assume the defense and indemnify him and Emory Clinic for their loss as described below.

F.    **The Underlying Lawsuit**

47.    On or about April 21, 2011, Renee Lewis, as Administratrix of the Estate of Brandon Maurice Harris, Deceased ("Lewis"), asserted various tort claims arising out of the death of Brandon Harris on January 23, 2010, and filed a Complaint for Medical Malpractice and Demand for Jury Trial ("Complaint") in *Renee Lewis, as Administratrix of the Estate of Brandon Maurice Harris, Deceased, Plaintiff v. The Emory Clinic, Inc., et al., Defendants*, in the State of DeKalb County, State of Georgia, Civil Action File No. 11AA36471-1 (the "Underlying Lawsuit").

48.    Included as named defendants in the Underlying Lawsuit were Emory Clinic, Neurocare, Wesley Woods, Emory Healthcare, Srinivas Bhadriraju, M.D., David Schulman, M.D., and the individual Neurocare sleep technologists.. A true and correct copy of the Complaint in the Underlying Lawsuit is attached hereto as Exhibit "D."

49.    In paragraphs 19-53, 61-62, and 65-66 of the Complaint filed in the Underlying Lawsuit, Lewis set forth claims for relief against Neurocare and its actual employees, including its sleep technologists.  Paragraph 17 alleged that

Emory Clinic, Neurocare, and Wesley Woods were liable for their actions as joint tortfeasors and under the theory of *respondeat superior*; Paragraph 64 alleged that the named defendants were joint tortfeasors whose negligence, jointly and severally, proximately caused Mr. Harris' death.

50.     Emory University, Inc., the parent corporation of Emory Healthcare, Inc., was substituted for Emory Healthcare, Inc. as a named Defendant before the trial of the Underlying Lawsuit.

51.     After the Complaint was filed in the Underlying Lawsuit, Neurocare failed to assume the defense of and failed to hold harmless Emory University, Inc. d/b/a Emory University Hospital, The Emory Clinic, Inc., Wesley Woods, and Dr. David Schulman, and failed to otherwise indemnify any of them.

52.     Emory University Hospital and Emory Clinic, incurred attorney's fees and expenses of litigation defending the Underlying Lawsuit through trial and during post-trial proceedings.

53.     Shortly before the commencement of trial, Neurocare, Inc. represented that it had settled its liability, including direct liability for its own conduct and vicarious liability for the conduct of its sleep technologists as alleged in the Underlying Lawsuit, and Neurocare, Inc. did not appear at trial.

54.     The Underlying Lawsuit was tried to a twelve person jury from September 21, 2015 through September 25, 2015.

55.     The jury in the Underlying Lawsuit returned a verdict in favor of Lewis, with fault apportioned as follows:

- Dr. David Schulman – 1%

- Dr. Srinivas Bhadriraju – 0%

- Neurocare, Inc. – 60%

- DeKalb County Emergency Medical Technicians – 39%

56.     The jury in the Underlying Lawsuit returned a total verdict of $20,509,284.40.

57.     The jury in the Underlying Lawsuit also found, by special interrogatory on the verdict form, that "Emory" was liable for the negligence of Neurocare and the sleep technologists Neurocare employed.

58.     A true and correct copy of the jury's verdict in the Underlying Lawsuit is attached hereto as Exhibit "E"

59.     At no time prior to, during, or even after the trial, was Neurocare dismissed as a party in the Underlying Lawsuit.

60.     On or about September 28, 2015, the Judgment was entered on the verdict in Underlying Lawsuit, in favor of Lewis and against (a) Dr. David Schulman, in the amount of $205,092.84; and (b) Emory University, Inc. d/b/a Emory University Hospital, in the amount of $12,305,570.64.  Judgment was also rendered in favor of Dr. Srinivas Bhadriraju.

61.   A true and correct copy of the Judgment in the Underlying Lawsuit is attached hereto as Exhibit "F."

62.   In entering the Judgment, the trial court noted that the jury "assessed fault against Nonparties Neurocare/sleep technologists" and that the jury found Emory University Hospital "liable for the negligence of the Nonparties Neurocare/sleep technologists."

63.   Neurocare had a full and fair opportunity to defend the claims in the Underlying Lawsuit.

64.   After entry of the Judgment in the Underlying Lawsuit, while their motion for new trial was pending, Plaintiffs herein reached a confidential settlement with Lewis in the Underlying Lawsuit for an amount less than the Judgment (but well in excess of $75,000), which amount has been paid.

65.   Plaintiffs asserted cross-claims against Neurocare in the Underlying Lawsuit for contractual indemnification, common law indemnification, breach of the Medical Director Agreement, and Plaintiffs also sought attorney's fees and expenses of litigation against Neurocare pursuant to O.C.G.A. § 13-6-11. Plaintiffs subsequently dismissed their cross-claims without prejudice and assert them herein.

## IV.
## COUNT ONE — CONTRACTUAL INDEMNIFICTION

66.     Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 through 65 above.

67.     Through Neurocare's continuing contractual obligations to Emory University, Inc. d/b/a Emory University Hospital, an affiliate of Wesley Woods, under the SDSA and SDSA Amendment, Neurocare agreed to indemnify, hold harmless, and defend Emory University, Inc. d/b/a Emory University Hospital.

68.     There were no direct claims against Emory University, Inc. d/b/a Emory University Hospital presented to the jury in the Underlying Lawsuit.

69.     The jury in the Underlying Lawsuit found Emory University, Inc. d/b/a Emory University Hospital liable for the negligence of Neurocare and its employees.

70.     The sole basis for the Judgment against Emory University, Inc. d/b/a Emory University Hospital in the Underlying Lawsuit was the derivative and active negligence of Neurocare and its employee sleep technologists.

71.     As a result of the Judgment entered on September 28, 2015 in the Underlying Lawsuit, as reduced by the subsequent settlement amount, Neurocare is indebted to Emory University, Inc. d/b/a Emory University Hospital in the amount of the confidential settlement paid on its behalf in the Underlying Lawsuit as a result of the Judgment.

72.     Neurocare failed to defend and/or indemnify Emory University, Inc. d/b/a Emory University Hospital.

73.     Emory University, Inc. d/b/a Emory University Hospital has incurred attorney's fees and expenses of litigation arising out of Neurocare's failure to provide it a defense in the Underlying Lawsuit and the defense of same, for which it also seeks recovery.

74.     Emory University, Inc. d/b/a Emory University Hospital has complied with all conditions precedent to bringing this action.

## V.
## COUNT TWO – COMMON LAW INDEMNIFICATION

75.     Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 through 74 above.

76.     There were no direct claims against Emory University, Inc. d/b/a Emory University Hospital presented to the jury in the Underlying Lawsuit.

77.     The jury in the Underlying Lawsuit found Emory University, Inc. d/b/a Emory University Hospital liable for the negligence of Neurocare and its employees.

78.     The sole basis for the Judgment against Emory University, Inc. d/b/a Emory University Hospital in the Underlying Lawsuit was the derivative and active negligence of Neurocare and its employee sleep technologists.

79.     Emory University, Inc. d/b/a Emory University Hospital's liability under the Judgment in the Underlying Lawsuit is liability imputed to it as a result of the tort actions of Neurocare and its employees.  As a result, Emory University, Inc. d/b/a Emory University Hospital is entitled to indemnification from Neurocare in the amount of the confidential settlement paid on its behalf in the Underlying Lawsuit as a result of the Judgment.

## VI.
## COUNT THREE – BREACH OF THE MEDICAL DIRECTOR AGREEMENT

80.     Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 through 79 above.

81.     Neurocare failed to provide professional liability insurance to defend and indemnify Dr. David Schulman in the Underlying Lawsuit as the physician designated under the MDA to be the medical director of the Emory Sleep Lab.

82.     The Emory Clinic, Inc., as the employer of Dr. David Schulman, has suffered damages in the amount of the confidential settlement paid on its and on behalf of Dr. David Schulman in settlement of the Judgment against Dr. David Schulman in the Underlying Lawsuit.

83.     As a result of Neurocare's breach of the MDA, The Emory Clinic, Inc. also incurred, as damages, attorney's fees and expenses of litigation defending

Dr. David Schulman through trial and post-judgment proceedings in the Underlying Lawsuit.

84.     The Emory Clinic, Inc. is entitled to recover from Neurocare the amount of the confidential settlement paid by it in settlement of the Judgment against Dr. David Schulman in the Underlying Lawsuit as a result of Neurocare's breach of its contractual duties in the MDA.

85.     The Emory Clinic, Inc. is entitled to recover its damages that also include the attorney's fees and expenses of litigation incurred as a result of Neurocare's breach of contractual duties in the MDA.

86.     The Emory Clinic, Inc. complied with all conditions precedent to bringing this action.

## VII.
## <u>COUNT FOUR – ATTORNEY'S FEES AND EXPENSES OF LITIGATION</u>

87.     Plaintiffs restate and incorporate herein by reference the allegations contained in paragraphs 1 through 86 above.

88.     By failing and refusing to indemnify, hold harmless, and defend Emory University, Inc. d/b/a Emory University Hospital, and otherwise failing to respond to the February 10, 2010 demand in a reasonable manner, Neurocare has invited and forced Plaintiffs to file this lawsuit to enforce Neurocare's contractual and common law obligations, and thus Neurocare has acted in bad faith, been

stubbornly litigious, and otherwise caused unnecessary trouble, costs, and expenses to Plaintiffs.

89.     By failing and refusing to provide professional liability insurance to defend and indemnify The Emory Clinic, Inc. and Dr. David Schulman and failing to provide a copy of the MDA until September 7, 2015, Neurocare has acted in bad faith, been stubbornly litigious, and otherwise caused unnecessary trouble, costs and expenses to Plaintiffs.

90.     Pursuant to O.C.G.A. § 13-6-11, Plaintiffs are entitled to recover their reasonable attorney's fees and expenses of litigation for bringing this action.

## VIII.
## CONCLUSION & PRAYER

91.     For the foregoing reasons, Plaintiffs asks that the Court issue citation for Defendant Neurocare to appear and answer, and that Plaintiffs be awarded judgment against Defendant for the following:

(1)     In favor of Emory University, Inc. d/b/a Emory University Hospital for contractual indemnification in the amount of the confidential settlement paid by it in the Underlying Lawsuit as a result of the Judgment;

(2)     In favor of Emory University, Inc. d/b/a Emory University Hospital for contractual indemnification for attorney's fees and expenses of litigation incurred in the Underlying Lawsuit;

(3)   Alternatively, in favor of Emory University, Inc. d/b/a Emory University Hospital for common law indemnification in the amount of the confidential settlement paid on behalf of Emory University, Inc. d/b/a Emory University Hospital in the Underlying Lawsuit as a result of the Judgment;

(4)   In favor of Emory University, Inc. d/b/a Emory University Hospital for common law indemnification for attorney's fees and expenses of litigation incurred in the Underlying Lawsuit;

(5)   In favor of The Emory Clinic, Inc. for breach of contract in the amount of the confidential settlement of the Judgment paid on behalf of David Schulman, M.D. in the Underlying Lawsuit;

(6)   In favor of The Emory Clinic, Inc. for attorney's fees and expenses of litigation incurred in the Underlying Lawsuit as a result of Neurocare's breach of contract;

(7)   In favor of Emory University, Inc. d/b/a Emory University Hospital for attorney's fees and expenses of litigation incurred in bringing this action;

(8)   In favor of The Emory Clinic, Inc. for attorney's fees and expenses of litigation incurred in bringing this action;

(9)   All other relief to which they are entitled; and

(10)   All costs taxed against Neurocare.

Respectfully submitted this 12th day of May, 2017.

ALLEN & McCAIN, P.C.

By:     /s/Hunter S. Allen, Jr.
        HUNTER S. ALLEN, JR.
        Georgia State Bar No. 010700
        GARY R. McCAIN
        Georgia State Bar No. 002270
        SIMUEL F. DOSTER, JR.
        Georgia State Bar No. 227200

Two Midtown Plaza, Suite 1700
1349 West Peachtree Street, N.W.
Atlanta, Georgia 30309
(404) 874-1700
(404) 847-1787 (fax)
hallen@amolawfirm.com
rmccain@amolawfirm.com
sdoster@amolawfirm.com

PRO   HAC   VICE   APPLICATIONS
PENDING
COOPER & SCULLY, P.C.
R. BRENT COOPER
Texas State Bar No. 04783250
DIANA L. FAUST
Texas State Bar No. 00793717
900 Jackson Street, Suite 100
Dallas, Texas 75202
Telephone: (214) 712-9500
Facsimile: (214) 712-9540
brent.cooper@cooperscully.com
diana.faust@cooperscully.com

ATTORNEYS FOR PLAINTIFFS
EMORY UNIVERSITY INC., d/b/a
EMORY UNIVERSITY HOSPITAL
AND THE EMORY CLINIC, INC.